## ADAM P. CAREY'S (dependent's) CASE.

No. 05-P-1183.

Suffolk. March 16, 2006. - July 18, 2006.

Present: PERRETTA, BROWN, & KAFKER, JJ.

*Workers' Compensation Act,* Decision of Industrial Accident Reviewing Board, Dependency compensation, Double compensation, Average weekly wages. *Minor,* Employment. *Parent and Child.*

A golf cart was a "motor vehicle" within the meaning of G. L. c. 149, § 62(10), and the employer of a minor who died while operating a golf cart in the course of his seasonal employment committed "serious and willful misconduct" by permitting the minor to operate such a motor vehicle; therefore, in an action for dependency benefits, the minor's parents were entitled to double compensation pursuant to G. L. c. 152, § 28. [751-755]

In an action for dependency benefits brought by the parents of a minor who died in the course of his part-time seasonal employment, the administrative judge correctly computed the minor's average weekly wage for purposes of determining recovery under G. L. c. 152, § 1(1) [755]; however, this court remanded the matter for a determination as to the parents' entitlement to the maximum benefit allowed by G. L. c. 152, §§ 31 and 32 [755-758].

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was heard in the Appeals Court by *Cowin,* J.

*Kevin T. Daly* for the claimants.

*Carl F. Schmitt* for the insurer.

*Martin B. Schneider* for the employer.

BROWN, J. Adam P. Carey, a minor (employee), died as a result of an injury sustained while operating a golf cart in the course of his part-time (seasonal) employment at the Kernwood Country Club.[1] At the time of his injury, he was sixteen years old, unmarried, and residing with his parents.

---

[1] The deceased was earning seven dollars per hour, and had been working for only four weeks.

The claimants, the employee's parents, filed a claim with the Department of Industrial Accidents for dependency benefits; an administrative judge issued a denial of payment. The claimants then appealed and sought a hearing pursuant to G. L. c. 152, § 11. An administrative judge awarded the claimants compensation of $39.23 weekly, based on an average weekly wage of $58.90, up until March 2, 2002, the date on which the employee would have reached the age of eighteen, had he lived.[2] The administrative judge denied the claimants' claim for further compensation under G. L. c. 152, §§ 31 and 32, as well as their claim for compensation under G. L. c. 152, § 28. The claimants appealed to the reviewing board pursuant to G. L. c. 152, § 11C.

The reviewing board partially reversed the administrative judge's decision, ordering that Eastern Casualty Insurance Company (insurer) pay § 31 benefits until the maximum statutory entitlement is reached. As to all other issues, the reviewing board affirmed the administrative judge's decision. Both sides appealed to a single justice of this court. See G. L. c. 152, § 12(2); G. L. c. 30A, § 14(7)(a)-(d), (f), (g); Appeals Court Rule 2:04 (1990); Standing Order of the Appeals Court Governing Appeals from the Industrial Accident Reviewing Board (repealed effective July 1, 2005). Subsequent to the filing of those appeals, the reviewing board amended its decision and ordered the insurer to pay the claimants' attorney a fee in the amount of $4,457.40 pursuant to G. L. c. 152, § 13A(5). The insurer also sought review of this award.

A single justice of this court issued a memorandum of decision and order essentially affirming the administrative judge's decision in its entirety. He reversed the reviewing board's decision to award maximum benefits under §§ 31 and 32 and remanded on the issue of the attorney's fees. It is from this decision that both parties appealed to a panel.

There are three issues before us in this appeal[3]: (1) whether G. L. c. 149, § 62, was violated, thereby allowing the claimants

---

[2]The insurer, Eastern Casualty Insurance Company, paid total benefits of $3,507.40 to the claimants, based on a calculated average weekly wage of $69.22, until the employee's eighteenth birthday.

[3]After remand, the reviewing board vacated its award of attorney's fees and costs under § 13A(5). No appeal from that decision is before us.

to recover double compensation pursuant to G. L. c. 152, § 28; (2) the correct computation of the employee's average weekly wage for purposes of determining recovery under G. L. c. 152, § 1(1); and (3) whether the claimants should receive the maximum benefits allowed by G. L. c. 152, §§ 31 and 32, based on a determination that they were dependent upon the employee at the time of his injury.

"We review the single justice's order 'in the same manner as if the single justice were a lower court.' . . . Because this court is conducting 'an analysis of the same agency record . . . there is no reason why the view of the [single justice] should be given any special weight.' *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979)." *Coggin* v. *Massachusetts Parole Bd.*, 42 Mass. App. Ct. 584, 587-588 (1997). Our review is de novo. See *ibid.*

(1) *Section 28.* The claimants contend that the employer committed "serious and wilful misconduct" by violating G. L. c. 149, § 62, thereby entitling them to double compensation pursuant to G. L. c. 152, § 28. The reviewing board and the single justice agreed with the administrative judge that, because the golf cart in this case was not used for transportation on a public way, it is not a "motor vehicle[] of any description" pursuant to G. L. c. 149, § 62(10). General Laws c. 149, § 62, as in effect when the injury occurred, in 2000, provides, in pertinent part:

> "No person shall employ a minor under eighteen or permit him to work . . . (10) in operating motor vehicles of any description."[4]

General Laws c. 152, § 28, as amended by St. 1934, c. 292, § 2, provides:

> "If the employee is injured by reason of the serious and wilful misconduct of an employer . . . the amounts of compensation hereinafter provided shall be doubled. In case the employer is insured, he shall repay to the insurer the extra compensation paid to the employee. . . . The

[4] See St. 1975, c. 376.

employment of any minor, known to be such, in violation of any provision of sections sixty to seventy-four, inclusive, . . . shall constitute serious and wilful misconduct under this section."

The parties stipulated as follows:

"1. [The Employee's] date of birth was March 2, 1984.[5]

"  . . .

"6. The Employee's job duties included . . . the operation and use of a golf cart on the private property of the [employer].

"7. On September 16, 2000, the Employee was asked to perform job duties which involved his operation and use of a golf cart on the private property of [the employer].

"8. The Employee died as a result of his operation and use of a battery powered golf cart during the course of his employment."

"The purpose of G. L. c. 149, § 62, is to prevent minors under eighteen from being exposed to dangers which they might not fully realize on account of their youth, inexperience, lack of foresight and want of restraint." *Bagge's Case*, 5 Mass. App. Ct. 839, 840 (1977). It is for this reason that § 62 bars minors' operation of motor vehicles "of any description." The prohibition is not limited to motor vehicles operated on public ways or highways, and the cases cited for this proposition are inapposite. See, e.g., *Arbella Mut. Ins. Co.* v. *Vynorious*, 34 Mass. App. Ct. 121, 123-125 (1993) (snowmobile not a motor vehicle for purposes of compulsory unemployed motorist coverage); *Mac-Lean* v. *Hingham Mut. Fire Ins. Co.*, 51 Mass. App. Ct. 870, 873 (2001) ("an ATV [all-terrain vehicle], not being a vehicle designed for regular use on public highways," was not subject to motor vehicle registration under G. L. c. 90).

The purpose of G. L. c. 149, § 62 — protecting employees

---

[5]The employer makes no argument that it was not aware that the employee was a minor. The penalty provision of G. L. c. 152, § 28, applies only to "[t]he employment of any minor, *known to be such*" (emphasis supplied).

under age eighteen from harm — is quite different from deciding whether a vehicle must be registered or insured. See, e.g., *Berdos v. Tremont & Suffolk Mills*, 209 Mass. 489, 492 (1911) (child labor laws enacted "in the exercise of the police power as a humanitarian measure and in the interest of the physical well-being of the race. It prevents children of immature judgment and undeveloped bodies from working under conditions likely to endanger their health, life or limb"). Thus, "[t]he limitations and prohibitions set by c. 149 have a beneficent purpose and should be liberally construed to accomplish this purpose." Nason, Koziol & Wall, Workers' Compensation § 20.8, at 188 (3d ed. 2003). We therefore read narrowly the statute's exceptions to prohibitions against the employment of minors. Cf. *Boardman's Case*, 365 Mass. 185, 189-190 (1974) (although accident occurred on a working farm, exception to prohibitions of G. L. c. 149, § 62[10], for operating a tractor or trailer on a "farm" did not apply where, under statutes as then in effect, employer was not a "farmer" because he was not engaged "principally in the occupation of farming").

With this view in mind, we turn to the instant matter. The 2002 amendment to § 62, see St. 2002, c. 207,[6] explicitly excluded from the prohibition of § 62(10) only the operation of golf carts on a golf course by minors licensed to drive. It is thus apparent that § 62(10), as in effect before the amendment, prohibited minors' operation of golf carts (whether on a golf course or on a way). If this were not so, no amendment would have been required to allow minors' operation of golf carts in the limited circumstances described in St. 2002. Such a reading of the statute satisfies the teaching of *Simmons* v. *County of Suffolk*, 230 Mass. 236, 237 (1918), that "[t]he maxim of statutory construction that the expression of one thing is the exclusion of another . . . is to be considered with regard to the object sought to be obtained by the entire legislation of which the subject matter to which it relates is but a part." See also

---

[6]The parties stipulated that the amendment does not apply to the facts of this case. Subsection (10) of § 62 now reads, "in operating motor vehicles of any description, except golf carts on a golf course if the minor is licensed to operate a motor vehicle . . . ." As the amendment does not apply, it is irrelevant whether the employee was licensed to drive or not, and no evidence was presented on that question.

G. L. c. 90, § 9, as appearing in St. 1977, c. 705, describing golf carts as "motor vehicles":

> "A motor vehicle designed for the carrying of golf clubs and not more than four persons may be operated without . . . registration [provided, inter alia, the owner has obtained a public liability policy or bond]."

Additional provisions in G. L. c. 149 also demonstrate that the Legislature's protection of minor employees is not limited to prohibiting their operation of vehicles on public highways. For example, the last sentence of c. 149, § 62, contains further exclusions from the prohibition in § 62(10) against "operating motor vehicles of any description":

> "This section shall not . . . prevent the employment of . . . a minor, to whom has been issued a license to operate motor vehicles, in the operation *on a farm*, or on a way for a distance not exceeding ten miles therefrom, of any truck, tractor, trailer or self-propelled agricultural instrument . . ." (emphasis supplied).

By way of illustration: certainly no one would argue that in the text quoted above, a "truck" is not a "motor vehicle." Nor does its operation on a farm, rather than on a public way, remove it from the definition of "motor vehicles of any description" in § 62 — thus the need for the explicit exclusion of trucks, among other things, from the prohibition of § 62(10), whether operated on a farm or on a public way, if operated by a minor licensed to drive. If a truck operated on a farm only (and not on a way) were not a "motor vehicle of any description," there would be no need for the exclusionary language quoted above. In a similar vein, see G. L. c. 149, § 62A, as amended through St. 1983, c. 173:

> "The provisions of sections sixty-one and sixty-two prohibiting the employment of certain minors shall not prohibit the employment of minors fourteen years of age and older to operate, . . . small power equipment of the kind utilized by home gardeners nor shall it prohibit the operation of a farm tractor operated *on a farm*; provided, that such minors under the age of sixteen have been certified as having satisfactorily completed a training program in vocational agriculture . . ." (emphasis supplied).

We therefore conclude that a golf cart is a "motor vehicle[] of any description" within the meaning of G. L. c. 149, § 62(10), and, pursuant to the parties' stipulations, double damages are due under G. L. c. 152, § 28.

(2) *Average weekly wage.* The administrative judge, the reviewing board, and the single justice agreed that the correct calculation of the average weekly wage was $58.90, based on the fact that the employee was a seasonal employee whose wage should be determined by that of comparable employees. See G. L. c. 152, § 1(1). This average weekly wage resulted in a compensation rate of $39.23 per week pursuant to G. L. c. 152, § 31, less than what the insurer had paid to the claimants — the insurer based the compensation rate on an average weekly wage of $69.22. The single justice reasoned:

> "The treatment of the administrative judge and the summary affirmance thereof by the reviewing board were correct. Pursuant to G. L. c. 152, § 1(1), the administrative judge reasonably determined that the employee's work experience of four weeks was too limited to compute the average weekly wage, and he instead applied a rate earned by a similar employee (giving the claimants the benefit of the doubt by selecting the highest rate among the similar employees in question)."

We agree with the single justice's reasoning.

(3) *Dependency benefits.* General Laws c. 152, § 32(*e*), inserted by St. 1926, c. 190, sets out the standard for when a parent is presumed to be dependent upon his or her child:

> "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: . . .
>
> "(*e*) A parent upon an unmarried child under the age of eighteen years; provided, that such child was living with the parent at the time of the injury resulting in death."

Before subsection (*e*) was added to the statute, parents could establish their dependence on their children as matter of fact. See St. 1911, c. 751, pt. 2, § 7, now G. L. c. 152, § 32, as amended by St. 1950, c. 738, § 4:

> "In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact as the fact may be at the time of the injury, or at the time of [the employee's] death."

When such dependency was established as matter of fact, the parent-claimants received the maximum benefit set out in the statute, regardless of whether the benefit period extended beyond the deceased child's eighteenth birthday. See, e.g., *Murphy's Case*, 218 Mass. 278, 279-280 (1914) (son injured at age fifteen; father received benefits for 300 weeks).

The administrative judge opined that, pursuant to c. 152, § 32(*e*), the presumption of dependence ends on the child's eighteenth birthday, and the parents must prove that their dependency continues after that date: "Certainly, the parents are entitled to the presumption of dependence until the employee's eighteenth birthday. Thereafter, they would have to bring forward facts that would support a finding that further dependence, either total or partial, still existed." The board disagreed, holding that "the conclusive presumption of parental dependency . . . continues past the decedent's unattained eighteenth birthday, until the maximum statutory entitlement under § 31 is reached."

We agree with the single justice and the administrative judge that, in both §§ 31 and 32, presumed eligibility in relation to children — whether they or their parents are the claimants — is generally confined to minors. See, e.g., § 31; § 32(*c*), (*d*), (*e*).[7] As to the termination of children's eligibility as claimants upon their eighteenth birthday, see *Canavan's Case*, 331 Mass. 444, 448 (1954).

The single justice observed that

> "the concept of parental dependency comes about by virtue of the parent's obligation to support the minor child and the concomitant right of the parent to receive any earnings of the child to assist in defraying the support obligation. See *Dembinksi's Case*, 231 Mass. 261, 263 (1918); Nason,

---

[7]Exceptions are made for children over age eighteen who are "physically or mentally incapacitated from earning," see § 32(*c*); and children over age eighteen who are full-time students "qualified for exemption as a dependent under . . . the Internal Revenue Code," see § 31.

Koziol & Wall, Workers' Compensation § 22.2 (3d ed. 2003)."

The presumption of parental dependency in c. 152, § 32(*e*), however, applies only to situations in which an unmarried child, under the age of eighteen and living at home, is working. There is nothing in that statutory provision to suggest the Legislature intended that a child support his parents indefinitely. It was merely to defray the parents' own support obligations. Therefore, any compensation due under subsection (*e*) ends at eighteen, unless a parent proves that he or she was, in fact, dependent upon the child. We agree with the single justice's reasoning that the purpose of workers' compensation is to replace income that individuals would otherwise receive; its purpose is not to "confer windfalls." "Absent proof of an actual dependency, prolongation of the presumption beyond what would have been the child's eighteenth birthday 'replaces' income that the parents would not have received had there been no injury" and is contrary to the purpose of workers' compensation law.

However, we also agree with the board that by creating a conclusive presumption of dependence for parents of minors living at home, the Legislature did not thereby preclude parents from receiving benefits past the child's eighteenth birthday, as they could before subsection (*e*) was added to the statute. The administrative judge suggested that, to continue receiving benefits after the deceased child's eighteenth birthday, parent-claimants would have to establish their continuing dependency after that date. His conclusion conflicts with the terms of the statute. See G. L. c. 152, § 32 ("In all other cases questions of dependency . . . shall be determined in accordance with the fact as the fact may be *at the time of the injury, or at the time of [the employee's] death*" [emphasis supplied]). Moreover, we think proof of future dependence would often be well-nigh impossible, and most likely would be based upon speculation and conjecture. Compare *Freeman's Case*, 233 Mass. 287, 291 (1919) ("A simple expression of purpose to contribute to support, unaccompanied by any actual contribution after reasonable opportunity, would not constitute dependency."). Instead, we

read § 32 to mean that, if parent-claimants are content to receive benefits only up to their deceased child's eighteenth birthday, they may rely exclusively upon the conclusive presumption of subsection (*e*). If, however, they wish to obtain the maximum benefit, and such benefit would necessarily extend beyond the child's eighteenth birthday, the parent-claimants may, pursuant to the last paragraph of § 32, submit to an administrative judge facts substantiating their dependence upon the child "at the time of the injury, or at the time of [the employee's] death." This practice is well-established, as prior to the insertion of subsection (*e*), it was the only avenue of recovery for parent-claimants. See, e.g., *Murphy's Case*, 218 Mass. 278 (1914); *Gove's Case*, 223 Mass. 187 (1916); *McMahon's Case*, 229 Mass. 48 (1918).

*Conclusion.* The judgment is affirmed as to the computation of the employee's average weekly wage. The judgment is reversed as to the violation of G. L. c. 149, § 62, and the claimants' entitlement to double compensation pursuant to G. L. c. 152, § 28. The judgment is vacated as to the claimants' entitlement to the maximum benefits allowed by G. L. c. 152, §§ 31 and 32. The matter is remanded to the reviewing board, where a new decision shall enter remanding to the administrative judge for a determination as to the claimants' entitlement to maximum benefits, and a recalculation of compensation due the claimants in accordance with this opinion.[8] The administrative judge may take new evidence as to the claimants' dependence upon the employee at the time of his injury.

*So ordered.*

---

[8]The fee question apparently mooted by the reviewing board's action after remand, see note 3, *supra*, may now be open.